# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ULTRA PREMIUM SERVICES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-2277 |
| | § | JURY |
| OFS INTERNATIONAL, LLC, | § | |
| | § | |
| OILFIELD SERVICES AND | § | |
| TECHNOLOGIES, LLC, and | § | |
| | § | |
| THREADING AND PRECISION | § | |
| MANUFACTURING, LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ultra Premium Services, LLC ("IPSCO") by and through its undersigned counsel, files this Original Complaint against OFS International, LLC, Oilfield Services and Technologies, LLC, and Threading and Precision Machining, LLC (collectively, "OFSi").

## NATURE OF THE ACTION

1. This is an action for breach of contract, as well as violations of the Defend Trade Secrets Act of 2016 ("DTSA", 18 U.S.C. § 1836 *et seq.*) and the Texas Uniform Trade Secrets Act ("TUTSA", Texas Civil Practice and Remedies Code § 134A.001, *et seq.*).

2. On December 12, 2016, IPSCO and OFSi entered into two agreements: License Agreement – Sales and Marketing (the "Sales Agreement", attached as Exhibit 1) and License Agreement – Manufacturing (the "Manufacturing Agreement", attached as Exhibit 2). On December 11, 2018, IPSCO and OFSi entered into two more agreements entitled License Agreement – Sales and Marketing ("the Second Sales Agreement", attached as Exhibit 3) and

1

License Agreement – Manufacturing ("the Second Manufacturing Agreement", attached as Exhibit 4). The Sales Agreement, Manufacturing Agreement, Second Sales Agreement, and Second Manufacturing Agreement are referred to collectively as "the Agreements."

3. Pursuant to the Agreements, OFSi has manufactured and sold a variety of products licensed under the Agreements ("IPSCO Products"). Recently, OFSi has begun manufacturing and marketing identical or nearly identical products using its own brands and product names ("OFSi Products"). A comparison of the technical data sheets reveals the specifications of the OFSi Products are nearly identical to the IPSCO Products. Additionally, the technical data sheets for the OFSi Products contain images that are obvious copies of the product images on IPSCO's respective technical data sheets.

4. OFSi's manufacturing and sale of these OFSi Products breaches several provisions in the Agreements, including confidentiality provisions in the Sales Agreement, Manufacturing Agreement, Second Sales Agreement, and Second Manufacturing Agreement, royalty provisions in the Sales Agreement and Second Sales Agreement, and licensed product provisions in the Manufacturing Agreement and Second Manufacturing Agreement. It also violates the DTSA and TUTSA.

5. Under the Agreements, OFSi agreed that if it breached any material term of the respective agreement, IPSCO is entitled to temporary and permanent injunctive relief.

6. OFSi has breached the Agreements and has willfully and maliciously misappropriated IPSCO's trade secrets. Plaintiff thus seeks, in addition to actual and exemplary damages, immediate and permanent injunctive relief against OFSi.

**PARTIES**

7. Plaintiff Ultra Premium Services, LLC is a Delaware limited liability company with

a principal place of business at 10120 Houston Oaks Drive, Houston, Texas 77064.

8. Defendant OFS International, LLC is a Delaware limited liability company with a principal place of business at 7735 Miller Road Number 3, Houston, Texas 77049.

9. Defendant Oilfield Services and Technologies, LLC is a Delaware limited liability company with a principal place of business at 7735 Miller Road Number 3, Houston, Texas 77049.

10. Defendant Threading and Precision Manufacturing, LLC is a Delaware limited liability company with a principal place of business at 7735 Miller Road Number 3, Houston, Texas 77049.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action under the Defend Trade Secrets Act. 18 U.S.C. § 1836 *et seq*.

12. This Court has supplemental jurisdiction over IPSCO's claims under Texas law under 28 U.S.C. § 1367 as all claims asserted herein are based on a common nucleus of operative facts.

13. Venue is proper in this Court under 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to IPSCO's claims occurred in this district and division and the harm that IPSCO has suffered and will continue to suffer as a result of OFSi's unlawful actions occurred in this district and division. Venue is also proper in this Court pursuant to the terms of the Manufacturing Agreement and Second Manufacturing Agreement in which OFSi agreed that any legal proceeding shall be brought in a United States Court in Texas. Venue is also proper in this Court pursuant to identical provisions in the Sales Agreement and Second Sales Agreement.

**FACTUAL BACKGROUND**

14. IPSCO designs and produces connections for steel tubular goods used in oil and gas wells. It owns several patents and patent-pending applications and has knowledge and confidential design information, trademarks, and other intellectual property related to the manufacturing and threading of these connections. IPSCO is a subsidiary of IPSCO Tubulars Inc., one of the largest producers in the United States of steel tubular products for use in oil and gas wells, pipelines, structural applications, and other purposes.

15. IPSCO's designed connections include proprietary and patented characteristics that, when manufactured on steel tubulars used in oil and gas wells ("OCTG," which is an abbreviation for Oil Country Tubular Goods), are used to connect one piece of OCTG to another when used in an oil or gas well. OCTG is generally purchased by operators of drilling rigs engaged in the exploration for, and production of, oil and natural gas. The IPSCO designed connections are highly engineered products, which take years and significant financial investment to develop.

16. OFSi provides oilfield services including field service, yard services and rig returns, inspection, threading and coupling, and accessories. OFSi touts that it "is in a unique position of being able to offer premium connections including the manufacture of premium couplings." OFSi, www.ofsint.com/about-us (last visited June 24, 2019).

**Relationship between IPSCO and OFSi**

17. IPSCO and OFSi have had a long and close working relationship. OFSi was initially created in 2012 to provide machine shop, inspection, and related services. At that time, they became one of a number of a companies licensed to use IPSCO's proprietary thread designs.

18. In 2014, OFSi purchased IPSCO's field services operations and accessories and tools manufacturing businesses. Following that transaction, OFSi became a manufacturer of

certain licensed IPSCO products and a field service provider for products with IPSCO connections. In addition, beginning in February 2018, OFSi administered and coordinated the activities of all of the other authorized field service representatives who are licensed to service IPSCO products.

19. OFSi has been one of seven certified IPSCO service providers authorized to provide running services in several states, including Texas, Louisiana, and Oklahoma. Although OFSi was initially only one of many entities licensed to use IPSCO's proprietary thread designs, that relationship changed significantly in 2016 with the execution of the agreements discussed in more detail below. Under those agreements, OFSi occupied a unique position as the only third party with a license to use IPSCO connections on a full range of products.

20. In addition, OFSi has manufactured IPSCO designed connections on OCTG and sold the resulting products in several states. Historically, a vast majority of OFSi's business has been related to IPSCO Tubulars Inc. and its subsidiaries including IPSCO.

21. From the time of its initial creation in 2012 until very recently, OFSi and IPSCO have been under common ownership. In September 2016, Konstantin Semerikov acquired a majority interest of OFSi from OFSi and IPSCO's common owner. In June 2019, Mr. Semerikov acquired the remaining interest in OFSi.

22. From OFSi's founding, the parties' close working relationship and common ownership and control has been common knowledge in the industry. Because of this relationship and OFSi's business, many industry participants have equated the two companies, even after they were no longer under common majority ownership.

**The Agreements**

23. OFSi desired access and use of some of IPSCO's intellectual property, designs, and

confidential design information. On December 12, 2016, IPSCO and OFSi entered into the Sales Agreement and the Manufacturing Agreement. The Sales Agreement and Manufacturing Agreement gave OFSi a use IPSCO connections on a full range of products. On December 11, 2018, IPSCO and OFSi entered into the Second Sales Agreement and Second Manufacturing Agreement, which are similar to the Sales Agreement and Manufacturing Agreement, and relate to the sales and manufacturing of a new series of IPSCO products marketed under the federally registered "TORQ" trademark. Second Sales Agreement, Ex. 3 at Exhibit A; Second Manufacturing Agreement, Ex. 4 at Exhibit A.

24. Under the Manufacturing Agreement and Second Manufacturing Agreement, IPSCO granted OFSi "a non-exclusive, non-transferable, terminable, revocable license (without the right to sublicense)" in and to certain Licensed Technology. Manufacturing Agreement, Ex. 2 at ¶ 2.1; Second Manufacturing Agreement, Ex. 4 at ¶ 2.1.

25. The Manufacturing Agreement and Second Manufacturing Agreement also allowed OFSi the right to manufacture, thread, and repair Licensed Products, which are identified in an attachment to the agreements. OFSi specifically acknowledged that "it acquire[d] no right, title or interest in and to either the Licensed Technology or the Licensed Trademark." Manufacturing Agreement, Ex. 2 at ¶ 2.3; Second Manufacturing Agreement, Ex. 4 at ¶ 2.3.

26. The Manufacturing Agreement and Second Manufacturing Agreement expressly prohibit OFSi from manufacturing any Licensed Product under any other name. Manufacturing Agreement, Ex. 2 at ¶ 4.1; Second Manufacturing Agreement, Ex. 4 at ¶ 4.1.

27. Under the Sales Agreement and Second Sales Agreement, IPSCO granted OFSi a license (1) "to market, distribute, offer for sale and sell the Licensed Product in the Licensed Distribution Territory" and (2) "in and to the Licensed Technology for use only in connection with

the marketing, distribution and sale of Licensed Products in the Licensed Distribution Territory." Sales Agreement, Ex. 1 at ¶ 2.1; Second Sales Agreement, Ex. 3 at ¶ 2.1.

28. Under the terms of the Sales Agreement and Second Sales Agreement, OFSi must report and pay monthly royalties to IPSCO for the sales of all Licensed Products. Sales Agreement, Ex. 1 at ¶¶ 3.1-3.4; Second Sales Agreement, Ex. 3 at ¶¶ 3.1-3.4.

29. Because OFSi would be granted full access to all of IPSCO's proprietary product drawings, technical specifications, and other confidential and trade secret information, the Agreements also contain Confidentiality and Non-Use provisions. Sales Agreement, Ex. 1 at ¶¶ 7.1-7.5; Manufacturing Agreement, Ex. 2 at ¶¶ 6.1-6.5; Second Sales Agreement, Ex. 3 at ¶¶ 7.1-7.5; Second Manufacturing Agreement, Ex. 4 at ¶¶ 6.1-6.5. Under the Sales Agreements and Manufacturing Agreements, Confidential Information is defined as "all information, whether written or oral, which is designated by IPSCO as 'Confidential' or which is proprietary or confidential in nature including, without limitation, the Licensed Technology and all materials, printed, electronic or otherwise embodying any facets of the Licensed Technology." Sales Agreement, Ex. 1 at ¶ 1.2; Manufacturing Agreement, Ex. 2 at ¶ 1.2; Second Sales Agreement, Ex. 3 at ¶ 1.2; Second Manufacturing Agreement, Ex. 4 at ¶ 1.2.

30. OFSi warranted and agreed that it was prohibited from using IPSCO's confidential and/or trade secret information for itself or others and would not disclose the confidential information. Furthermore, OFSi agreed that it would use the Confidential Information "for the sole and limited purpose of exercising its rights and performing its obligations" under the Agreements. Sales Agreement, Ex. 1 at ¶ 7.3; Manufacturing Agreement, Ex. 2 at ¶ 6.3; Second Sales Agreement, Ex. 3 at ¶ 7.3; Second Manufacturing Agreement, Ex. 4 at ¶ 6.3.

31. Under the Agreements, if OFSi breached a material term of the agreement, IPSCO

is entitled to temporary and permanent injunctions. Sales Agreement, Ex. 1 at ¶ 14.3; Manufacturing Agreement, Ex. 2 at ¶ 13.3; Second Sales Agreement, Ex. 3 at ¶ 14.3; Second Manufacturing Agreement, Ex. 4 at ¶ 13.3.

**OFSi Breaches the Agreements**

32. IPSCO has discovered that OFSi is selling products under its own name that are identical or nearly identical to IPSCO products that OFSi has been manufacturing and selling pursuant to the Agreements.

33. As one example, the first product brought to IPSCO's attention was an OFSi 5" CYHP BHT connector. An examination of the OFSi 5" 18# P-110 CYHP BHT connection technical data sheet shows that its specifications are nearly identical to the IPSCO UP BPN P-110 CYHP. *Compare* OFSi P-110 CYHP BHT Technical Data Sheet, attached as Ex. 5, *with* IPSCO UP BPN P-110 CYHP Performance Data Sheet, attached as Ex. 6. An examination of the respective technical data sheets further shows OFSi copied the image of the product from IPSCO's Performance Data Sheet.

34. The OFSi BHT connection is so similar to the IPSCO UP BPN connector, that even OFSi confused the products. On a recent Field Service Weekly Activity Report, OFSi identified the BHT as an IPSCO connection. The OFSi BHT connection and the IPSCO UP BPN connection are nearly identical, if not identical, and OFSi itself cannot distinguish between the products. Customers have also confused the IPSCO UP BPN connection and the OFSi BHT connection.

35. OFSi has similarly manufactured, marketed, sold, and installed numerous other products under its own name that, upon information and belief, are identical or nearly identical to IPSCO Licensed Products as defined under the Agreements. These products include those marketed by OFSi under the following product names: BHT, BHT1, BHT-S, Warhawk, Reaper-

8

SF, Python SF, Python DC, and Warthog D ("breaching products").

36. In part because of OFSi and IPSCO's historical affiliation, OFSi's breaching products have caused confusion within the industry. Several of IPSCO's customers have inquired about the breaching products believing they are IPSCO products. OFSi has capitalized upon this confusion by selling breaching products to IPSCO customers.

37. OFSi has misappropriated IPSCO's confidential, proprietary, and trade secret information for use in designing, manufacturing, selling, and installing connections and tubular products as OFSi products.

38. Through its misappropriation of IPSCO's confidential information, and its use of IPSCO's confidential information in the design, manufacturing, selling, and installation of OFSi products, OFSi has breached the Sales Agreement, Second Sales Agreement, Manufacturing Agreement, and Second Manufacturing Agreement. Additionally, OFSi has failed to pay IPSCO royalties in breach of the Sales Agreement and Second Sales Agreement.

## COUNT 1
### Violation of the Defend Trade Secrets Act (DTSA)
### 18 U.S.C. § 1836

39. IPSCO incorporates its allegations set forth above.

40. IPSCO is the owner of various trade secrets related to its steel tubular goods and connection products, which are used in or intended for use in, interstate commerce. Pursuant to the Agreements, IPSCO gave OFSi access to its confidential and proprietary information, including "discoveries, concepts, ideas, formulas and compositions . . . works of authorship, know-how, manufacturing and production procedures, processes and techniques (including, without limitation, thread profiles), methods of use, research and development information, drawings, manufacturing specifications, overlays, plans and technical data." This confidential and

proprietary information constitutes trade secrets within the meaning of the DTSA, 18 U.S.C. § 1839(3).

41. IPSCO has invested and spent significant effort, energy, resources and time developing these trade secrets, which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. The IPSCO products take years and signicant financial resources to develop.

42. IPSCO has taken reasonable steps to maintain the confidentiality of its confidential, proprietary, and trade secret information. All of the parties' Agreements contained confidentiality provisions. Furthermore, IPSCO required OFSi to maintain written agreements prohibiting the disclosure of IPSCO confidential, proprietary and trade secret information with all individuals involved in the use or exploitation of IPSCO's confidential, proprietary, and trade secret information. Additionally, IPSCO strictly controls physical access to its offices and facilities and maintains its confidential information, including drawings and other sensitive technical information, on separate servers to which access is carefully restricted.

43. OFSi gained access to IPSCO's trade secrets only after it signed the Agreements and was subject to confidentiality and contractual obligations to protect IPSCO's information. OFSi had a duty to maintain the secrecy of and limit the use of IPSCO's trade secrets.

44. OFSi has misappropriated IPSCO's trade secrets by improperly using the trade secrets, including violations of obligations under the Agreements and under Texas state law. OFSi knew or had reason to know that its use of IPSCO's trade secrets was improper because it had a duty to limit the use of IPSCO's trade secrets. And OFSi did not have express or implied consent from IPSCO use its trade secrets to manufacture a competing line of products.

45. The use of IPSCO's trade secrets without its consent has damaged and will irreparably harm IPSCO. Indeed OFSi agrees that any breach of its obligations to protect IPSCO's Confidential Information "will cause [IPSCO] irreparable harm and loss."

46. OFSi's actions as described constitute a misappropriation within the meaning of the DTSA, 18 U.S.C. § 1839(5), and entitle IPSCO to injunctive and equitable relief to protect itself against the actual or threatened misappropriation of its trade secrets. The misappropriation has caused and will continue to cause damage to IPSCO and, unless restrained, will further damage IPSCO, the nature and extent of which may not be able to be proven with certainty, irreparably injuring IPSCO, leaving it without a remedy at law if such injunctive or equitable relief is not issued.

47. Accordingly, preliminary and permanent injunctive relief, including the seizure of property necessary to prevent the propagation or dissemination of IPSCO's trade secrets, is necessary to prevent irreparable harm and further disclosure and misuse of IPSCO's trade secrets. 18 U.S.C. § 1836(b)(2)(A)(i).

48. IPSCO is entitled to recover any unjust enrichment obtained by the misappropriation of IPSCO's trade secrets and the violation of the DTSA. IPSCO is entitled to injunctive relief to prevent further use and dissemination of IPSCO's trade secrets, as well as damages for actual losses caused by the misappropriation of the trade secrets, damages for unjust enrichment, exemplary damages, and reasonable attorney's fees and costs. 18 U.S.C. § 1839(b)(3)(C), (D). The misappropriation of IPSCO's trade secrets was willful and malicious, entitling IPSCO, on information and belief, to exemplary and punitive damages, up to two times its actual damages. 18 U.S.C. § 1839(b)(3)(D).

# COUNT 2
## Violation of the Texas Uniform Trade Secrets Act (TUTSA)
## Texas Civil Practice and Remedies Code § 134A.001

49. IPSCO incorporates its allegations set forth above.

50. As described above, IPSCO is the owner of trade secrets.

51. It has taken reasonable measures under the circumstances to keep its information secret.

52. IPSCO has invested and spent significant effort, energy, resources and time developing these trade secrets, which derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

53. OFSi had a duty to maintain the secrecy of and limit the use of IPSCO's trade secrets.

54. OFSi has misappropriated IPSCO's trade secrets by improperly using the trade secrets, including violations of obligations under the Agreements and under Texas state law. OFSi knew or had reason to know that its use of IPSCO's trade secrets was improper because it had a duty to limit the use of IPSCO's trade secrets. And OFSi did not have express or implied consent from IPSCO use its trade secrets to manufacture a competing line of products.

55. OFSi has used and will continue to intentionally use IPSCO's trade secrets to unfairly compete with IPSCO.

56. OFSi's conduct has been willful and malicious and results from the conscious disregard of the rights of IPSCO. Tex. Civ. Prac. & Rem. Code § 134A.002(7).

57. The actions as described herein constitute a misappropriation within the meaning of the TUTSA, and entitle IPSCO to injunctive and equitable relief to protect itself against the

actual or threatened misappropriation of its trade secrets. The misappropriation has caused and will continue to cause damage to IPSCO and, unless restrained, will further damage IPSCO, the nature and extent of which may not be able to be proven with certainty, irreparably injuring IPSCO, leaving it without a remedy at law if such injunctive or equitable relief does not issue. Accordingly, preliminary and permanent injunctive relief is necessary to prevent irreparable harm and further disclosure and misuse of IPSCO's trade secrets.

58. As a direct and proximate cause of OFSi's acts, IPSCO has suffered and is likely to continue to suffer loss and damages and is entitled to restitution, compensation, exemplary damages, and attorney's fees pursuant to Texas Civil Practice and Remedies Code § 134A.001, *et seq.*, in an amount to be proven at trial.

## COUNT 3
## Breach of Contract

59. IPSCO incorporates its allegations set forth above.

60. The Sales Agreement, Second Sales Agreement, Manufacturing Agreement, and Second Manufacturing Agreement are valid, enforceable contracts.

61. IPSCO has complied with and performed under the Sales Agreement, Second Sales Agreement, Manufacturing Agreement, and Second Manufacturing Agreement.

62. The Manufacturing Agreement and Second Manufacturing Agreement expressly prohibit OFSi from manufacturing any Licensed Product (*e.g.*, the BPN connection) under any other name. OFSi has breached the Manufacturing Agreement and Second Manufacturing Agreement by manufacturing IPSCO Licensed Products as OFSi products (*e.g.*, the BHT connection).

63. Additionally, in all of the parties' Agreements, OFSi warranted and acknowledged that it was prohibited from using IPSCO's confidential and/or trade secret information for itself or

13

others. Furthermore, OFSi agreed that it would use the Confidential Information "for the sole and limited purpose of exercising its rights and performing its obligations" under the Agreements. As described above, OFSi has breached the confidentiality provisions in these Agreements by using IPSCO's confidential information to manufacture and market competing products under OFSi's name and brands.

64. Additionally, OFSi has failed to make royalty payments to IPSCO, in breach of the Sales Agreement and Second Sales Agreement. Sales Agreement, Ex. 1 at ¶¶ 3.1-3.4; Second Sales Agreement, Ex. 3 at ¶¶ 3.1-3.4.

65. Because money damages are insufficient to make whole and adequately protect IPSCO against further harm, IPSCO is entitled to specific performance of the Agreements, including the Confidentiality and Non-Use provisions, and preliminary and permanent injunctive relief prohibiting any further breaches of the Agreements by OFSi.

66. IPSCO is entitled to recover direct and consequential damages as a result of these breaches. OFSi is also liable to IPSCO for reasonable and necessary attorneys' fees incurred for the preparation and trial of this claim, plus additional sums in the event of an appeal, as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

## CONDITIONS PRECEDENT

67. All conditions precedent to the filing of this cause of action have been satisfied.

## ATTORNEY'S FEES

68. IPSCO seeks to recover all reasonable and necessary costs and fees incurred in connection with this lawsuit and through all levels of appeal, including attorney's fees, costs, and expert witness fees, under all applicable law.

## JURY DEMAND

69. IPSCO requests a trial by jury of all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, IPSCO prays for an Order and Judgment as follows:

a. Entering a temporary restraining order against OFSi;

b. Actual damages;

c. Exemplary damages;

d. Attorney's fees

e. Costs and other fees;

f. Specific performance of the Agreements;

g. Preliminary and permanent injunctive relief prohibiting Defendants OFS International LLC and Oilfield Services and Technologies LLC, and each of their members, officers, agents, employees, and those persons in active concert or participation with them, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device from:

  i. Using or disclosing Confidential Information obtained from IPSCO pursuant to the Agreements. IPSCO's Confidential Information is defined as all information regarding or reflecting the design, manufacture, or specifications of IPSCO's Licensed Products pursuant to the Agreements;

  ii. Using, sharing, summarizing, discussing or communicating in any manner concerning or otherwise making use of any of IPSCO's Confidential Information in any form and manufacturing products that are substantially similar to IPSCO's Licensed Products, including, but not limited to, the BHT, Python-SF, and Reaper-SF. OFSi is further enjoined from directly or indirectly marketing, selling, or providing field services for these same products; and

iii. OFSi shall return all of IPSCO's Confidential Information to counsel for IPSCO and shall not further possess, use, access or disclose IPSCO's Confidential Information.

h. All other relief, at law or equity, to which IPSCO may be entitled.

Dated: June 25, 2019

Respectfully submitted,

/s/ *Winstol D. Carter, Jr.*
Winstol D. Carter, Jr.
State Bar No. 03932950
Southern District of Texas No. 2934
*winn.carter@morganlewis.com*
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T. 713.890.5000
F. 713.890.5001

***Attorney in Charge for Plaintiff Ultra Premium Services, LLC***

OF COUNSEL:

**MORGAN, LEWIS & BOCKIUS LLP**

C. Erik Hawes
State Bar No. 24042543
Southern District of Texas No. 34000
*erik.hawes@morganlewis.com*

Claire Swift Kugler
State Bar No. 00797530
Southern District of Texas No. 21675
*claire.kugler@morganlewis.com*

Veronica J. Lew
State Bar No. 24082110
Southern District of Texas No. 2303787
*veronica.lew@morganlewis.com*