**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ULTRA PREMIUM SERVICES, LLC | * * * | 4:19-CV-02277 |
| V. | * * | 11:47 A.M. to 12:16 P.M. |
| OFS INTERNATIONAL, LLC, OILFIELD SERVICES AND TECHNOLOGIES, LLC, AND THREADING AND PRECISION MANUFACTURING, LLC | * * * * * | JULY 30, 2019 |

**EXCERPT OF BENCH TRIAL
BEFORE THE HONORABLE VANESSA D. GILMORE
Volume 1 of 1 Volume**

**APPEARANCES**

**FOR THE PLAINTIFF:**
Mr. Winstol Dean Carter, Jr.
Mr. Archis Vasant Ozarkar
Ms. Claire Swift Kugler
Mr. Clay Erik Hawes
Ms. Veronica Jean Lew
Morgan Lewis
1000 Louisiana
Suite 4000
Houston, Texas 77002
(713) 890-5140

**FOR THE DEFENDANTS:**
Mr. Joseph Y. Ahmad
Mr. Timothy Conway Shelby
Mr. Sammy Ford, IV
Mr. Jason S. McManis
Ms. Jordan Lyn Warshauer
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, PC
1221 McKinney Street
Suite 2500
Houston, Texas 77010-2009
(713) 600-4900

1 **ALSO IN ATTENDANCE:**
  Mr. Piotr Galitzine
2 Mr. David Green

3

  Court Reporter:
4 Laura Wells, RPR, RMR, CRR
  515 Rusk Street, Suite 8004
5 Houston, Texas 77002

6 Proceedings recorded by mechanical stenography.
  Transcript produced by computer-assisted transcription.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Laura Wells, CRR, RDR*

```
                1      (Beginning of requested excerpt, as follows:)
                2           THE COURT:  Anything else from this witness?
                3           MR. CARTER:  Nothing here, Judge.
                4           THE COURT:  All right.  Thank you.  You may step
11:47:13        5   down.  Thank you.  You may step down.
                6           THE WITNESS:  Oh, thank you.
                7           THE COURT:  I'm admitting 234.  234 is admitted.
                8      (Plaintiff's Exhibit Number 234 admitted into
                9   evidence.)
11:47:25       10           THE COURT:  Who are the other witnesses that you
               11   are calling, Mr. Carter, and what are you expecting their
               12   testimony is going to be?
               13           MR. CARTER:  So, we will be calling
               14   Mr. Galitzine.
11:47:37       15           THE COURT:  To testify to what?
               16           MR. CARTER:  He is the CEO of the company
               17   testifying about trade secret protection, the license
               18   agreements, the corporate relationship between OFSi and
               19   its sister company Ultra and the relationship between
11:47:56       20   them.
               21           THE COURT:  Okay.  Who else?
               22           MR. CARTER:  And also about the harm done to the
               23   company.
               24           THE COURT:  Also about what?
11:48:07       25           MR. CARTER:  The harm done to the company, loss
```

of competitive advantage.

THE COURT: Who else is going to testify?

MR. CARTER: We were planning to call adversely Mr. Doug Dunford, who was the engineer -- is an engineer for OFSi -- not an engineer but an employee of OFSi who will testify about his work in the design of the Warthog and --

THE COURT: And what about Ryan Broussard? That's your former employee, right?

MR. CARTER: Ryan Broussard?

THE COURT: Yes.

MR. CARTER: Yes. We would be calling him adversely.

THE COURT: To testify about the design of what?

MR. CARTER: Yes.

THE COURT: Of which?

MR. CARTER: His work with the Python SF.

THE COURT: Okay. So the reason I'm asking is because, honestly, I have heard enough. I have heard enough, and I think that it would really be a waste of time for us to keep on, if that's the testimony that we're expecting to hear, because I think that there is just a couple of elements that you need to get preliminary injunctive relief that are just not going to be made here.

And I'm happy to talk about what they are, but I think

|  |  |
|---|---|
|  | 1  at the end of the day you are not going to be able to show |
|  | 2  irreparable harm.  I think that you can show monetary |
|  | 3  damages, and I think that you are not going to be able to |
|  | 4  show that granting the preliminary injunction is not going |
| 11:50:03 | 5  to disturb the public interest when we have got people |
|  | 6  that have already ordered these products that we know how |
|  | 7  much they are going to be sold for and so we can figure |
|  | 8  out what the damages are going to be. |
|  | 9        So I think that it's just going to be difficult for |
| 11:50:16 | 10 you to show me enough for you to get preliminary |
|  | 11 injunctive relief here. |
|  | 12       If you want to go forward, you can; but I would really |
|  | 13 think that it would be a better use of our time for me to |
|  | 14 make some findings and then tell you what I want you guys |
| 11:50:34 | 15 to do next. |
|  | 16             MR. CARTER:  Would it assist the Court to argue |
|  | 17 the point of irreparable harm? |
|  | 18             THE COURT:  I'm happy to let you try to do that, |
|  | 19 but your own witness testified.  I asked him point-blank |
| 11:50:52 | 20 if these are the two things that you think are exactly the |
|  | 21 same, can we -- can you figure out how much your damages |
|  | 22 are by figuring out how much they have sold?  He said, oh, |
|  | 23 yeah, yeah, we could do that.  I'm not sure that's the |
|  | 24 answer that you wanted to hear, but that was his answer. |
| 11:51:04 | 25             MR. CARTER:  Well, Judge, he wasn't taking into |

*Laura Wells, CRR, RDR*

6

consideration a number of the other factors that go into the calculation of irreparable harm, especially in a trade secrets context when there is a presumption of irrevocable harm.

THE COURT: Well, here is -- here is my problem in terms of all this irreparable harm issue. This is -- this has been a very short window in terms of where we have figured everything out. You guys basically figured everything out in May. Here we are in July doing the preliminary injunction hearing. I told you that I could give you, you know, a short deal on that. And I can give you a short turnaround on the trial. We can try this case before the end of the year.

So for me it's hard -- it would be hard for me to see how you could show me that even from a trade secrets context that you could show irreparable harm in a seven- or eight-month period of time, which is all that we would be talking about.

You can have a trial before the year ends. I mean, you guys have done so much work on this case in such a short amount of time, I'm really impressed by how much you guys have been able to get done discovery-wise in this amount of time.

And for you to be able to show that there is irreparable harm in terms of the trade secrets issue

*Laura Wells, CRR, RDR*

```
11:52:30
```

        1   between now and, say, December, I think you would be
        2   hard-pressed.  I can give you a trial.  You can have a
        3   trial before the end of the year, but I really have -- and
        4   I understand, you know, he said what he said and you are
        5   saying, yeah, but he doesn't know about trade secrets and
        6   all that.
        7        But I'm just sort of not feeling that as a realistic
        8   issue, given that you just figured out that this was
        9   happening just in May or so.  You got right on it.  We are
       10   here already in July.  And, you know, in terms -- you can
       11   get money damages if, in fact, it's -- you can prove --
       12   you're successful on the merits, which I think that there
       13   is a likelihood that the plaintiff would be successful on
       14   the merits at this point.
       15        I think that you have shown that there are trade
       16   secrets.  I think that you have shown that there is
       17   economic value.  I think that you have shown, at a
       18   minimum, threatened misappropriation of the plaintiff's
       19   designs and that you would prevail on your claims.
       20        I just don't think you are going to get there on the
       21   irreparable harm and on the other element, which is for me
       22   to compare the harm to you versus the harm to the public,
       23   particularly between -- in the next three or four months.
       24   But I'm happy to let you argue that to me.  But I can give
       25   you a trial date today.

*Laura Wells, CRR, RDR*

You know, I mean, I think that on most of the important elements, in terms of likelihood of success and confidentiality of the information and controlling access and all that, I think the plaintiff prevails on all of that. I just don't think that you can get there on what you need to get preliminary injunctive relief.

That's where I am at this point in time. That's why I wanted to know what these other people are going to talk about.

MR. CARTER: Certainly.

THE COURT: I'm not trying to cut you off; but frankly, I have heard what I need to hear with respect to the issue that I'm to decide today, which is preliminary injunctive relief. I'm not addressing whether or not -- I'm not getting to the merits, although I think that there is a likelihood that the plaintiff would prevail on the merits of this case; but I don't have to get all the way there today.

MR. CARTER: You don't.

THE COURT: But I'm happy to hear argument from you or the other side or I am happy to have you present the rest of your witnesses. I just wanted to save us all some time and let you know sort of where my thoughts were, and I wanted to find out what the other witnesses were going to be and to see if any of the other witnesses are

going to help push the needle on the issues that I'm still having the most trouble with.  It doesn't sound like they are, not even on the trade secrets issue.

So what is your pleasure?

MR. CARTER:  May I have a moment to confer?

THE COURT:  Sure.  What do you want to do?

MR. CARTER:  I'm sorry?

THE COURT:  Why are you looking like that?

MR. CARTER:  Well, I was just going to talk with my client and discuss with them, if I could have a few minutes.

THE COURT:  Sure.  Did you want to say something before we take a few-minute break?

MR. AHMAD:  Only if it helps, Your Honor.  My understanding is we are ready for trial and only a minimal discovery will be necessary.  We have accomplished a lot, like Your Honor pointed out.

THE COURT:  I'm impressed.  Y'all have really been working hard.

MR. AHMAD:  We have.  Not me personally.  Other people.

THE COURT:  Well, I know. You have got gray hair.  It's for the younger people with no gray hair to do all this work.  I hope Mr. Carter has done the same thing. It's time for the folks with gray hair to make the little

worker bees do some work, right?  Okay.  So what do you want to do?  Just take a few minutes?

    MR. CARTER:  Take a few minutes and discuss with my client our options.

    THE COURT:  Okay.  But let me say this.  Before y'all break, let me say this.  Here is what I really think.  I think that there is a substantial likelihood of success on the merits by the plaintiff.  I think I'm going to send you guys to mediation soon, like almost immediately, just so that you know that's what is getting ready to happen.  This is what is getting ready to happen.

    And, I mean, the only issue that I think I'm ruling on today, though I guess would be adverse to the plaintiff's position in their motion, is I just don't think there is irreparable harm.  I think you can get money damages.  That's it.  That's all I'm saying really.  I think you can get money damages.  I think that I'm not going to disadvantage people who already have orders in.  That's it.  Those are injunctive relief issues, and I don't think they weigh in your favor.  And so that's kind of where I am at this point in time.

    I know I haven't heard everything, and I know I didn't hear your expert witness and all of that, but I'm sending y'all to mediation.  So just factor that into your thought processes as you go and discuss what you are going to do.

```
                1           MR. CARTER:  All right.
                2           THE COURT:  All right.
                3           MR. FORD:  Thank you, Your Honor.
                4           THE COURT:  How long are you going to be?
11:57:59        5           MR. CARTER:  Five minutes.
                6           THE COURT:  That's fine.  I am trying to decide
                7  what I'm getting ready to do.
                8           (Recess from 11:58 a.m. to 12:13 p.m.)
                9           THE COURT:  Yes.
12:14:09       10           MR. CARTER:  So did I understand that you were
               11  going to go ahead and if we stopped now you were going to
               12  issue findings of fact?
               13           THE COURT:  Not just other than what I said.
               14  Basically not any more than that.
12:14:22       15           MR. CARTER:  I'm sorry, Judge?
               16           THE COURT:  Not any more than what I already just
               17  said.
               18           MR. CARTER:  Oh, I see.  I see what you mean.
               19           THE COURT:  Nothing more than what I have already
12:14:30       20  said.
               21           MR. CARTER:  Okay.  So with that, Judge, we would
               22  like a trial setting in early 2020.
               23           THE COURT:  Okay.  I can get you -- y'all can
               24  have a December 20th, 2019, docket call with a January
12:14:45       25  trial setting, and I would likely reach you.  I am still
```

*Laura Wells, CRR, RDR*

sending y'all to mediation.

MR. CARTER: I understand.

MR. AHMAD: Nothing from us, Your Honor.

THE COURT: Okay. Then, no, I wasn't going to issue any additional findings other than what I have already stated on the record.

MR. CARTER: Understood.

THE COURT: But just to the extent that it did not appear that I was issuing a final ruling, my earlier statements were intended to be that and to say that the Court believes that a temporary restraining order -- I mean, a preliminary injunction is not appropriate in this case, that even though the Court believes that the plaintiff has shown a substantial likelihood of success on the merits, that they had trade secrets that they were deriving value from, and that they have shown either an actual or, at a minimum, a threatened misappropriation of their trade secrets by the defendant, the Court finds that the plaintiff cannot show today that it will suffer irreparable harm and that a preliminary injunction would not disturb the public interest. Therefore, the plaintiff's motion for preliminary injunction is denied.

The Court is ordering the parties to go to mediation. You have 60 days. Have you talked about potentially mediating this case and have a name that you might want to

```
12:16:11
```

1  give me?
2      MR. CARTER:  We have not, Judge.  We will.
3      THE COURT:  Let me know something by tomorrow if
4  you have a name in mind that you want.  I'm giving you
5  60 days from today.  Today is July the 30th.  By September
6  the 30th you will need to go to mediation.  Call me
7  tomorrow and tell me the name of a mediator.  If you don't
8  agree on somebody by tomorrow, I'll pick.  Your docket
9  call is 12-20-19.  Trial setting is January 2020.
10     Anything else we can talk about today?
11     MR. CARTER:  Have a great vacation.
12     THE COURT:  All right.  What about you?
13     MR. AHMAD:  Not from us, Your Honor.  Thank you.
14     THE COURT:  All right.  Thank you.  I'll send you
15 all out a scheduling order.
16     *(End of requested excerpt.)*
17 *Date: July 30, 2019*
18                    **COURT REPORTER'S CERTIFICATE**
19    *I, Laura Wells, certify that the foregoing is a*
20 *correct transcript from the record of proceedings in the*
21 *above-entitled matter.*
22
23                        */s/ Laura Wells*
24                      *Laura Wells, CRR, RMR*
25

*Laura Wells, CRR, RDR*