# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ULTRA PREMIUM SERVICES, LLC, *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-2277 |
| OFS INTERNATIONAL, LLC, ET AL., *Defendants*. | § § § | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Entry of Prosecution Bar (Dkt. 67). Having considered the parties' submissions, argument of counsel at a hearing on November 5, 2019, and the law, the Court grants the motion in part and enters a more limited prosecution bar than that sought by Defendants.

### I. Background

Plaintiff filed its Original Complaint in this action on June 25, 2019 asserting causes of action against Defendants for violation of the Defend Trade Secrets Act, violation of the Texas Uniform Trade Secrets Act, and breach of contract, and seeking a temporary restraining order, a preliminary injunction, a permanent injunction and damages. An expedited trial is set for January 2020.

The parties have exchanged, and continue to exchange, documents that contain confidential technical information such as product design drawings and specifications. An Agreed Protective Order governs the production and disclosure of confidential information in this case (Dkt. 19), but it does not include a "prosecution bar," a type of protective order that is "unique to patent law" and therefore governed by Federal Circuit law. *In re*

*Deutsche Bank Trust, Co.*, 605 F.3d 1373, 1377-78 (Fed. Cir. 2010). Inclusion of a prosecution bar in a protective order may be necessary when "even the most rigorous efforts of the recipient of [confidential] information to preserve confidentiality . . . may not prevent inadvertent compromise." *Deutsche Bank*, 605 F.3d at 1378. Defendants seek a prosecution bar because "[t]hrough discovery in this case, it has come to [Defendants'] attention that [Plaintiff's] litigation counsel are also [Plaintiff's] primary patent counsel." Dkt. 67 at 1. Plaintiff opposes entry of a prosecution bar in any form.

## II. Analysis

As an initial matter, Plaintiff objects to the timing of Defendants' motion. Plaintiff's counsel has already received information designated "attorneys' eyes only" pursuant to the Agreed Protective Order in this case without being put to the choice of continuing to represent Plaintiff in this litigation or continuing with patent prosecution activities. While the timing of Defendants' motion eliminates Plaintiff's ability to choose the role it prefers for counsel, Plaintiff made a choice to have patent prosecution counsel represent it in this litigation despite the known risk presented by patent prosecution work involving the same type of threaded connections at issue in this suit.[1] From the inception of this fast-tracked case Plaintiff has been in a better position than the Defendants to know the scope of its counsels' patent prosecution activities. Plaintiff has cited no authority, and the Court has found none, holding that a party waives the right to seek a prosecution bar by not seeking it in an initial agreed protective order. Therefore, the timing of Defendants' motion does

---

[1] While the standard protective order governing patent cases in this district, available on the Court's website, does not contain a prosecution bar, it does expressly state that confidential information "may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose."

2

not preclude this Court's consideration of the standards for prosecution bars under *Deutsche Bank* and other relevant authorities and the facts in the record.

### A. Allocation of Burdens

As explained in *Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC*, 881 F. Supp. 2d 254, 256-56 (D.P.R. 2012), district courts are split on how to allocate the burden of proof when deciding a motion for entry of a prosecution bar. Most courts apply a two-step inquiry: first the moving party must show, on a counsel-by-counsel basis, an unacceptable risk of inadvertent disclosure; and second the court must balance that risk against the potential harm to the non-movant. *Id.* at 255 and n.2 (gathering cases). A minority of courts utilizes a different two-step inquiry: first, the movant must show the prosecution bar is reasonable given the information at issue, the scope of activities to be barred and their subject matter, and the duration of the bar; and second, the court weighs the need for the prosecution bar "against the potential injury to the party deprived of its counsel of choice." *Id.* at 256 (citing *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. 09-02180, 2011 WL 197811 (N.D. Cal. Jan. 20, 2011)). The minority view shifts the burden to the non-movant to seek, on a counsel-by-counsel basis, an exemption to the bar. *Id.* One problem with the majority view is that early in litigation it is unlikely that the proponent of a prosecution bar has sufficient information about opposing counsel's involvement in competitive decision-making to show good cause. *Id.*

As far as the Court is aware, neither the Fifth Circuit nor district courts in the Southern District of Texas have taken a side in the split described above. In this case, as

3

explained in more detail below, the Court's conclusion is the same whether the burden is on Defendants to show competitive decision-making or on Plaintiff to show lack thereof.

B.     **Competitive Decision-making**

There is no dispute that Plaintiff has or expects to have patent applications pending before the U.S. Patent Office regarding threaded connections, and that two of Plaintiff's litigation attorneys, C. Eric Hawes and Neil Ozarkar, have a history of representing Plaintiff in the prosecution of patent applications. The determination of an unacceptable risk of inadvertent disclosure and the need for a prosecution bar turns on the extent to which Hawes and Ozarkar are involved in "competitive decision-making" in connection with patent prosecutions for Plaintiff. *Deutsche Bank*, 605 F.3d at 1378 (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).

Representing a party in patent prosecutions alone does not make counsel a competitive decision-maker for purposes of a prosecution bar. *Deutsche Bank*, 605 F.3d at 1379. Because of the wide-range of patent prosecution activities, it is important for the Court "to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis. *Id.* at 1380. The nature and extent of attorney involvement in prosecution activities may fall into one of three categories:

> 1. Minimal attorney engagement in patent prosecution (by, for example, "reporting office actions or filing ancillary paperwork") [which] gives rise to a limited risk of inadvertent disclosure;
>
> 2. "Substantial[ ]" engagement in patent prosecution (by, for example, "investigating prior art" or "making strategic decisions on the type and scope of patent protection") [which] involves a high risk of inadvertent disclosure; and

3. A middle "range of patent prosecution activities" (involving, for example, only an occasional opportunity "to shape the content of a patent application") that "may pose a closer question" concerning the propriety of a patent prosecution bar, but nonetheless require an individualized inquiry.

*Chiesi USA, Inc. v. Sandoz Inc.*, 41 F. Supp. 3d 417, 425 (D.N.J. 2014) (citing *Deutsche Bank*, 605 F.3d at 1379-80).

Plaintiff submitted Hawes's Affidavit in support of its position that his work falls into the first category:

> 3. Neither Mr. Ozarkar nor I has ever drafted a patent application for Ultra. We strictly play the role of outside patent prosecution counsel — Ultra sends draft patent applications to us, we review them and occasionally provide limited input, and then we file the applications. We do not control the content of Ultra's patent applications, make decisions concerning product designs, or receive disclosure material for new inventions.
>
> 4. Any advice that I provide to Ultra concerning research and development is purely legal advice, and not related to any competitive business activities.

Dkt. 101 at 6-7. In addition, Piotr Galitzine, Chairman and CEO of Plaintiff, attests that while Hawes and Ozarkar have assisted Plaintiff in patent prosecution, they do so in connection with "patents that Ultra decides to pursue based on decisions by Ultra," and both "provide legal advice to Ultra on research and development related issues" but do not make decisions "about pricing, marketing, scientific research, or other strategic or competitive matters." Dkt. 94-4 at 3. Both affidavits are very general and do not describe with any particularity the work Hawes and Ozarkar actually perform for Ultra as patent prosecution counsel.

Defendants produced documents that paint a different picture of Hawes' role in representing Plaintiff in patent prosecutions. These documents include Patent Office fee

5

transmittal forms dated May 8, 2017 (Dkt. 67-7 at 35-39), as well as more substantive material regarding Plaintiff's patent application 15/047,165 titled "Tubular Connection With Helically Extending Torque Shoulder" filed February 18, 2016. On September 29, 2016, Hawes submitted remarks to the Patent Office in response to an Office Action mailed on June 13, 2016 and Office Communication mailed August 24, 2016. Hawes submitted the remarks to explain why the Applicant "disagrees that the pending claims are directed towards more than one patentably distinct species of invention." Dkt. 67-7 at 106-12. On January 27, 2017, Hawes filed amendments to the patent application referenced above and asked the patent examiner to "please reconsider the application in light" of the amendments. Dkt. 67-7 at 58-69. On February 16, 2017, a patent examiner conducted a phone interview of Hawes regarding the above referenced patent application. Hawes and the examiner discussed claims 6, 7 and 21-26 and "agreed to amend the dependence of claim 7, cancel claims 22-26, and add claims 27-30 in order to place application into condition for allowance." Dkt. 67-7 at 44-52.[2]

At the hearing on November 5, 2019, Hawes stated that when he received the patent examiner's February 2017 phone call, he told the examiner he would have to speak to his client and call back, and then did essentially nothing more than relay a message from Plaintiff to the examiner. Tr. at 10:33.[3] But it appears to the Court that Hawes was more than a simple conduit for the submissions to the Patent Office he signed because they conclude: "If, while considering these claims, the Examiner believes that a telephone

---

[2] These documents were cited in Defendants' motion. Dkt. 67 at 7.
[3] A written transcript of the November 5, 2019 hearing is not yet available. Citations are to the approximate time at which the noted representations took place.

conference would be beneficial towards furthering prosecution of this case, the Examiner is strongly encouraged to contact the undersigned attorney [Hawes] at the number listed." *Id.* at 69, 112. In addition, Hawes stated at the hearing that his institutional knowledge of threaded connection technology puts him in a unique position to advise Plaintiff how to respond to Patent Office Actions challenging patentability and scope of claims. Tr. at 10:43.

Hawes also represented at the hearing that his role in patent prosecutions for Plaintiff significantly diminished when Plaintiff hired in-house patent counsel in 2017 and since then he has done only ministerial tasks of a type his secretary could complete without his assistance. Tr. at 10:34. The Court accepts these and other representations from Hawes as an officer of the Court. Nonetheless, the evidence shows that Hawes in the past engaged in competitive decision-making for Plaintiff in prosecuting patents related to threaded connections. Given his long-term relationship with Plaintiff and the depth of his knowledge and experience in the area of threaded connections, and Galitzine's statement in his declaration that Plaintiff would be "seriously disadvantaged" if not allowed to use Hawes as patent prosecution counsel (Dkt. 94-4 at 3), it is not mere speculation that Plaintiff may want to engage Hawes to undertake similar conduct on behalf of Plaintiff in the future.

In sum, Plaintiff defines competitive decision-making too narrowly. *See* Galitzine Aff. Dkt. 94-4 (Counsel "does not make decisions about pricing, marketing, scientific research, or other strategic or competitive matters."). The evidence before the Court indicates Hawes's patent prosecution activities have included "strategically amending or

7

surrendering claim scope during prosecution" and Hawes has had "the opportunity to control the content of patent applications and the direction and scope of protection sought" by Plaintiff's patent applications. *Deutsche Bank*, 605 F.3d at 1380. Courts have held that similar activities constitute competitive decision-making. *See Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, Case No. 14-cv-00876, 2014 WL 6629431 at *3 (N.D. Cal. Nov. 21, 2014) ("post-approval amendments and other arguments in favor of patentability" constitute competitive decision-making); *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 3:11-CV-01810-JLS, 2012 WL 528248, at *5 (S.D. Cal. Feb. 17, 2012) ("Specifically, [counsel's] prosecution duties include analyzing and submitting prior art, making strategic decisions concerning claim scope, and amending claims. These activities demonstrate [counsel] is substantially engaged in prosecution, and is properly considered a competitive decisionmaker." Citing *Deutsche Bank,* 605 F.3d at 1380–81); *Vishay Dale Electronics, Inc. V. Cyntec Co., Ltd.*, No. 8:07CV191, 2008 WL 4372765 (D. Neb. Sept. 22, 2008) (plaintiff's outside counsel had "overall responsibility for advising the plaintiff on patent prosecution matters and patent litigation," and had "a key advisory relationship with regard to patent prosecution and litigation."). Thus, the Court finds that absent a prosecution bar there is an unacceptable risk that Hawes could inadvertently disclose Defendants' attorneys' eyes only technical information in the course of future patent prosecution activities.

In contrast, Defendants presented no evidence that Ozarkar, or any other member of Plaintiff's litigation team, has engaged in patent prosecution activities that constitute competitive decision-making. Ozarkar's name is on a list of Morgan Lewis attorneys

approved to represent Plaintiff in patent prosecutions, but the list says nothing about what Ozarkar does or has done in connection with patent prosecution. Dkt. 67-8 at 2-6. As to Ozarkar, the Hawes and Galitzine Affidavits stand uncontested. Galitzine's Affidavit also confirms that Hawes and Ozarkar "are the only attorneys that have prosecuted patents and patent applications on behalf of [Plaintiff] over the last 5 years." Dkt. 94-4 at 3. To apply a prosecution bar to Ozarkar or other litigation counsel in the absence of evidence demonstrating competitive decision-making would violate the dictates of *Deutsche Bank*.[4] *See MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 773–74 (D. Md. 2003) ("the Court concludes that the Universities' argument amounts to a per se prohibition on the use of litigation counsel who also prosecute patents. Other than Olstein's status as a patent prosecutor for MedImmune, the Court finds no other indicators that would warrant denying him access to confidential materials.").

### C. Balance of Harm

Having determined that Hawes has engaged in activities courts have found to be included in the spectrum of competitive decision-making, the Court must balance the risk of inadvertent disclosure against the potential harm to Plaintiff from a restriction on its right to be represented by its counsel of choice. *Deutsche Bank*, 605 F.3d at 1380. "In balancing these interests, the district court has broad discretion to decide what degree of protection is required." *Id.*

---

[4] Of course, to the extent that Ozarkar has reviewed attorneys' eyes only technical information, he is prohibited by paragraphs 6 and 7 of the Agreed Protective Order, as are Plaintiff's other litigation lawyers, from using that information in prosecuting patents or for any purpose other than the current litigation. Indeed, all counsel who have access to Defendants' attorneys' eyes only technical information are charged with ensuring they do not disclose the information, even inadvertently.

The risk of an inadvertent disclosure is fairly high based on: Hawes' activities of advising Plaintiff and the PTO regarding the surrendering and amending of claims during the course of a patent prosecution; the fact that Plaintiff Ultra and Defendant OFSi are direct competitors; the fact that Plaintiff is actively prosecuting patents related to threaded connections like those at issue in this case; and the fact that Hawes has seen attorneys' eyes only technical information and drawings of Defendants' threaded connections in this lawsuit.

Based on Mr. Hawes's representations regarding his decreased and essentially ministerial role since Plaintiff's hiring of in-house patent counsel in 2017, and on the number of lawyers in the law firm's intellectual property group, including Ozarkar, the Court finds the harm to Plaintiff from a prosecution bar limited to Hawes is not overly significant. Although Plaintiff may wish to engage Hawes in more substantive patent prosecution work in the future, a prosecution bar of limited duration would minimize the degree of potential harm.

On balance, the risk of inadvertent disclosure outweighs the harm to Plaintiff from not having counsel of its choice in patent prosecutions related to threaded connections for a limited amount of time.

**D. Reasonableness of Prosecution Bar**

Defendants seek to modify the Agreed Protective Order to include the following prosecution bar:

> Furthermore, absent written consent of the Producing Party, any person on behalf of the Plaintiff who receives one or more items containing technical information and designated "Attorney's Eyes Only" shall not be involved,

> directly or indirectly, in any of the following activities: (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to threaded connections before any foreign or domestic agency, including the United States Patent and Trademark Office, including reissue proceedings. These prohibitions are not intended to and shall not preclude counsel from participating in reexamination, inter partes review, covered business method review, or reissue proceedings on behalf of a patentee. These prohibitions shall begin with the entry of this Order and shall end eighteen (18) months after the final resolution of this action, including all appeals.

Dkt. 67 at 2. Other than as to the existence of competitive decision-making and the proposed duration of the bar, Plaintiff has not argued that the scope of the proposed prosecution bar is unreasonable. There is no dispute that the parties have exchanged highly technical information of the sort that triggers the need for a prosecution bar. *See Front Row Techs., LLC v. NBA Media Ventures*, LLC, 125 F. Supp. 3d 1260, 1281 (D.N.M. 2015) ("Courts have drawn a line between financial data and business information, on the one hand, and highly confidential technical information, on the other. Financial data or business information that could give a party a competitive edge, but is irrelevant to a patent application, does not raise sufficient risk for a prosecution bar). The proposed prosecution bar is limited in scope to participation in patent prosecutions related to threaded connections, the subject matter of the current litigation. Reexamination proceedings, which some courts have found do not impose of risk of inadvertent disclosure, are expressly excluded from the proposed prosecution bar. *See Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 185 (D. Del. 2010) ("Unlike patent prosecution, reexamination is a limited proceeding assessing only the patentability of existing claims against specific prior art references.

Defendants' confidential information is 'basically irrelevant' to that particular determination.").

The Court agrees with Plaintiff that a prosecution bar that lasts 18 months from the conclusion of appeals is onerous. The Court finds that a bar of one year from the date of judgment in the District Court is within the range generally approved by courts as reasonable and is sufficient to protect Defendants' interests. *See Carlson Pet Prods., Inc. v. North States Indus., Inc.*, Case No. 0:17-cv-02529, 2019 WL 2991220 at *7 (D. Minn. July 9, 2019) ("the Court finds a more appropriate duration for the prosecution bar that will adequately protect against the risk of competitive use of North States' confidential information is one year from the entry of a final judgment in this Court."); *Eon Corp. IP Holdings, LLC v. AT & T Mobility LLC*, 881 F. Supp. 2d 254, 258 (D.P.R. 2012)("[t]he bar's duration should not be determined by this case's future life in the courts of appeals" and should be limited to "one year from a final judgment *in this court.*" (emphasis in original)); *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 581 (N.D. Cal. 2008) (finding a one-year bar reasonable); *Medtronic, Inc. v. Guidant Corp.*, 2001 WL 34784493 at *4 (D. Minn.2001) (approving a prosecution bar for "the period of one year after the conclusion of the instant litigation.").

### III. Conclusion and Order

The Court concludes that Defendants' production of "attorneys' eyes only" technical information in this case triggers the need for a prosecution bar, and the scope of activities prohibited by the proposed bar and the definition of the subject matter covered by the bar "reasonably reflect the risk presented by disclosure of proprietary, competitive

information." *Deutsche Bank*, 605 F.3d at 1381. The Court further concludes that the evidence before the court supports imposition of the proposed prosecution bar as to C. Eric Hawes, but not as to Neil Ozarkar or other litigation counsel of record. Finally, the Court concludes that the prosecution bar shall be in effect until one year from entry of final judgment in the district court. Therefore, Defendants' Motion for Entry of a Prosecution Bar is GRANTED IN PART, as set forth above.

Signed on November 07, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge