IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ULTRA PREMIUM SERVICES, LLC d/b/a TMK IPSCO *and* IPSCO TUBULARS INC d/b/a TMK IPSCO, | § § § § | |
| Plaintiffs, | § § | Civil Action No. 4:19-cv-2277 |
| v. | § § | Jury Trial Demanded |
| OFS INTERNATIONAL, LLC, OILFIELD SERVICES AND TECHNOLOGIES, LLC, THREADING AND PRECISION MANUFACTURING, LLC, *and* FERMATA TECHNOLOGIES, LLC, | § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO STRIKE THE REBUTTAL OPINIONS OF DAVID MALLIS**

Precisely as Defendants expected, Plaintiffs' opposition to Defendants' partial motion for summary judgment exposes the real reason behind Plaintiffs' disclosure of Mr. Mallis' new "rebuttal" opinion after the deadline for affirmative opinions had passed: to serve as a springboard to oppose Defendants' motion for summary judgment. But there is no legal basis for allowing Plaintiffs to succeed on this tactical maneuver.

Plaintiffs provide no justifiable reason for allowing Plaintiffs to subvert the Rules, the parties' agreement, or the Court's Order. They do not dispute the parties' agreed deadline for the timing and scope of rebuttal reports. Nor do they dispute that the Court entered a Scheduling Order enforcing the parties' agreement. Yet, rather than abide by the Rules and the Court's Order,

1

Plaintiffs accuse Defendants of "procedural gamesmanship" for seeking to enforce them.[1] But the only party engaging in any gamesmanship is Plaintiffs. Defendants simply want Plaintiffs to be held to the Rules and live up to the parties' agreement and the Court's Order.

Plaintiffs have not identified any opinion from Mr. Schwind that relates to pin nose thickness that Mr. Mallis had to rebut. Plaintiffs have not identified any paragraphs in Mr. Schwind's report to which these new opinions are directly responsive. Instead, Plaintiffs' opposition illustrates perfectly how their new opinions miss the mark for proper rebuttal. Plaintiffs themselves point out that the Schwind opinion Mr. Mallis is purportedly rebutting addresses the existence of a trade secret. But in Paragraphs 32–35, Mr. Mallis conducts no analysis to determine whether any of the parameters he analyzes are trade secrets. Rather, he accepts it on his "understanding" and goes on to examine whether, in his opinion, misappropriation has occurred. A misappropriation opinion, by definition, cannot rebut an opinion on the existence of a trade secret. Because Paragraphs 32–35 are not proper rebuttal, they are untimely affirmative opinions, and the Court should strike them.

### A. Plaintiffs have sandbagged Defendants with a new affirmative opinion after all real opportunities for Defendants to respond have passed.

In their response, Plaintiffs seek to paint Defendants as the bad actor for no reason other than Defendants seek to enforce the Parties' agreement, the Federal Rules, and the Court's order. Defendants want a level playing field. The strong suspicion when Defendants filed this motion to strike was that Plaintiffs had "inserted" this new minimum pin nose thickness opinion "in an attempt to generate a fact dispute to defeat summary judgment" after the Court had granted leave

---

[1] Indeed, the typical scheduling order in the Southern District of Texas sets the deadlines for dispositive motions and other pretrial motions (including *Daubert* motions and motions to strike like this one) on the same day. *See, e.g.*, Judge Gilmore's form scheduling order; Judge Ellison's form scheduling order; Judge Marmolejo's form scheduling order; Judge Rodriguez's form scheduling order; Judge Atlas's form scheduling order. Far from gamesmanship, Defendants' adhered to common practice in this District.

2

for limited summary judgment briefing. Dkt. 226 at 1, 5. *See also id.* at 2–3 (noting that this new opinion materialized only two days after the Court's order allowing summary judgment briefing).

Plaintiffs' response to the summary judgment has confirmed that Defendants' suspicions were well-founded. Plaintiffs laid behind the log and sprung a brand-new opinion on Defendants that, as discussed further herein, is not proper rebuttal. They then relied on that opinion as a key argument in opposing summary judgment. *See generally* Dkt. 238 (citing to Paragraphs 32–35 *sixteen times* in a 20-page response and devoting nearly twenty-five percent of their substantive argument that there is a dispute of material fact to the design parameter of pin nose thickness). Rather than advance this affirmative opinion on either of their initial deadlines, Plaintiffs waited until the rebuttal deadline (after they were concerned summary judgment might be granted against them) to inject this new affirmative opinion into the case in a "transparent attempt" to avoid summary judgment. Indeed, Plaintiffs rely on pin nose thickness as the very first substantive argument on the existence of a trade secret in their response to Defendants' motion for summary judgment.[2] *Id.* at 8–10. Underscoring that reliance, in their proposed order, Plaintiffs' very first proposed basis for denying the motion for summary judgment is that there is a genuine dispute of material fact regarding minimum pin nose thickness. Dkt. 238-1 at 1.

This should not be allowed. Discovery in the case is closed. Defendants' experts have already issued all of their opinions. Both sides' fact witnesses have already been deposed. There is no meaningful opportunity for Defendants to obtain evidence on the new opinion through written discovery, document production, or depositions of Plaintiffs' witnesses. The Parties agreed to the

---

[2] Plaintiffs sought to cast doubt on Defendants' motives by calling the motion to strike a "transparent attempt to bolster their motion for partial summary judgment." Dkt. 233 at 1. But Defendants were entirely up front about the reason this motion was filed when it was filed, so that it would be considered "in conjunction with Defendants' partial motion for summary judgment." Dkt. 226. As it turns out, Defendants' concerns about Plaintiffs' motives based on the timing of the new opinion were correct.

scope and timing of rebuttal reports, and Defendants should not be permitted to change the rules as the clock runs out, simply because they are concerned about the final outcome. As explained herein, Mr. Mallis' rebuttal opinion in Paragraphs 32–35 is not proper rebuttal. Rather, it is a late affirmative opinion generated solely to oppose summary judgment, and the Court should strike it.

      **B.     The lone case cited by Plaintiffs supports granting Defendants' motion.**

In reliance on a single case from the District of Massachusetts, Plaintiffs argue that the plain language of Rule 26 means something other than what it says: as long as the conclusion in a rebuttal report differs from the conclusions of the opposing party's report, the rebuttal is proper. Close examination of the *Glass Dimensions* case, however, reveals that it directly supports OFSi's request to strike Paragraphs 32–35 of Mr. Mallis' Rebuttal Report.

There were two rebuttal reports at issue in *Glass Dimensions*, referred to as the Pomerantz Report and the Harmon Report. *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 290 F.R.D. 11, 15–16 (D. Mass. 2013). In that case, the plaintiff had submitted no affirmative reports, and was responding to opinions raised for the first time in defense expert reports. *Id.* at 15. The Court held that, under Rule 26, the plaintiff was entitled to rebut the defense opinion regarding the "reasonableness and market-competitiveness of the 50% fee," an issue on which the defendant had the burden of proof. *Id.* at 16.

But, although the court recognized that "new evidence and data" may be offered "to directly contradict or rebut the opposing party's expert,"[3] the court drew a distinction between expert opinions that are "on the same general 'subject matter'" and expert opinions that are both "on the same general 'subject matter'" and "directly 'contradict or rebut'" the prior expert opinion.

---

[3] This is the language that Plaintiffs' cite from *Glass Dimensions* as purportedly supporting their "rebuttal." But this is just a recitation of the Rule and, as explained herein, the proper application of the Rule results in exclusion of Mr. Mallis' "rebuttal" opinions because they do not actually qualify as rebuttal.

4

*Id.* That is precisely the issue with Mr. Mallis' "rebuttal." Defendants do not disagree that the Mallis Rebuttal Report addresses the same general subject matter, *i.e.*, whether there has or has not been any misappropriation of confidential information from Plaintiffs' BPN connection. But this is not the lone requirement to qualify as rebuttal opinion under Rule 26. Rather, proper rebuttal must also directly contradict or rebut evidence from a prior expert opinion. *Id. See also People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1191 (S.D. Cal. 2016) ("The Court finds that Dr. Huntley's opinion and testimony 'do not solely contradict or rebut' the Scalmanini and Johnson reports. As such, they are not proper rebuttal.") (internal citation omitted); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) ("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports.").

In *Glass Dimensions*, because the Pomerantz Report did not directly contradict or rebut the prior expert opinion, the court found that it was "more appropriately characterized as an untimely affirmative expert report" and granted the motion to strike. 290 F.R.D. at 16. The Harmon Report, in contrast, was found to be proper rebuttal because it engaged in a "point-by-point rebuttal" of the prior expert opinion. *Id.* at 17. By comparison, in Paragraphs 32–35, Mr. Mallis does not make one citation to a single opinion in any of the nearly 100 pages of expert opinion previously offered by Mr. Schwind. And, it is undisputed that Mr. Schwind never opines on, in any of his previously disclosed reports, the pin nose thickness or minimum pin nose thickness of BPN or BHT. *See Funderburk v. S. Carolina Elec. & Gas Co.*, No. 15-cv-4660, 2019 WL 3406814, at *4 (D.S.C. July 9, 2019) ("In the context of Rule 26, a rebuttal expert must restrict his or her testimony to attacking the theories offered by the adversary's experts.") (internal quotation and citation omitted).

Plaintiffs attempt to circumvent the direct contradiction or rebuttal requirement by arguing that Mr. Schwind's statements regarding the concept of pin-to-pin contact on API-compatible BPN connections, or that there is nothing proprietary in BPN, somehow open the door to a new analysis of a new design parameter of the connection. This is specious. First, the basis for those opinions from Mr. Schwind are statements made by Mr. Mallis and Alejandro Juarez (IPSCO's Director of Product Development)—they are not disputed issues. *See* Plas. Partial MSJ (Dkt. 230). Mr. Schwind dowes not rely on or cite to minimum pin nose thickness as the basis for any of these conclusions. And second, Mr. Mallis does not conduct an analysis of pin-nose thickness to reach a conclusion rebutting Mr. Schwind's opinions on the existence of a trade secret.[4] Rather, he accepts the minimum pin nose thickness as proprietary based on his "understanding" and moves straight into an analysis of whether BHT's minimum pin nose thickness was based on BPN's minimum pin nose thickness—an issue that goes solely to misappropriation.

It is entirely undisputed that Mr. Schwind offered no opinions regarding pin nose thickness or minimum pin nose thickness. There was no reason for Mr. Schwind to do so, because Mr. Mallis did not opine on these design parameters in his initial or supplemental reports. Further, Plaintiffs purported "rebuttal" goes to the issue of misappropriation, which is an entirely different element than that which they concede was addressed by Mr. Schwind—the existence of a trade secret. Accordingly, because Paragraphs 32–35 do not directly contradict or rebut any opinion previously offered by Mr. Schwind, those paragraphs are not rebuttal opinions under Rule 26 but are affirmative opinions disclosed after the affirmative report deadline and the Court should exclude them under application of the same principles set forth in *Glass Dimensions*. 290 F.R.D. at 16.

---

[4] Plaintiffs concede that Mr. Schwind's opinions relevant to the analysis of Defendants' motion to strike address "the existence of a trade secret," as opposed to misappropriation Dkt. 233 at 2.

### C. Plaintiffs offer no compelling reason for bypassing the good cause analysis.

Plaintiffs criticize Defendants citations to Fifth Circuit precedent and other courts in this District that employed the good cause standard to analyze whether to allow expert testimony that has been disclosed after the deadline. But, although Plaintiffs distinguish those cases on the facts, those are arguments as to the results from the application of the good cause analysis, not whether the analysis should be applied in the first instance. Because, as explained above, Mr. Mallis' "rebuttal" opinions are actually untimely affirmative opinions, the proper analysis for evaluating whether those opinions should be admitted over the Court's prior Scheduling Order—to which all parties agreed—is a good cause analysis. *See, e.g.*, *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990); *Emerson v. Johnson & Johnson*, No. 17-cv-2708, 2019 WL 764660, at *2 (S.D. Tex. Jan. 22, 2019).

### D. Plaintiffs do not argue that good cause exists for amending the expert deadlines to allow an affirmative opinion to be disclosed after the deadline.

Plaintiffs do not analyze the good cause factors to argue that, on the facts of this case, good cause exists for amending the Court's Scheduling Order. Specifically, Plaintiffs do not offer any explanation for why this opinion was not included in their initial or supplemental reports. *Geiserman*, 893 F.2d at 791. Plaintiffs do not contend this new opinion is important. *Id.* And Plaintiffs do not argue that this case could (or should) be continued.[5] *Id.*

Instead, Plaintiffs' only argument on anything that touches upon the good cause standard is that OFSi has no prejudice because it has not sought to depose Mr. Mallis on these new opinions. Dkt. 233 at 4. But this is an overly narrow view. Defendants planned their written discovery, took their depositions, and prepared their case in light of the deadlines set forth in the Court's

---

[5] Plaintiffs insinuate that a continuance is a preferred means of addressing this issue (Dkt. 233 at 4), but this case has already been continued twice, and Plaintiffs provide no real argument for doing so again.

Scheduling Order. The discovery cutoff is long past. Depositions in this case are over. The Parties are set for trial in less than two months.

Because Plaintiffs sat on this affirmative opinion until well after the close of discovery, Defendants were effectively prevented from obtaining all the facts necessary to evaluate or dispute it. Because all deadlines have passed, allowing Plaintiffs to inject this new opinion into the case at the eleventh hour prevents Defendants from offering a competing opinion. This is highly prejudicial, and a mere deposition of Mr. Mallis (whose opinion is related to misappropriation, and not the existence of a trade secret) does not cure that prejudice.

### E. Conclusion

There is no question that the Court has discretion to enforce its Scheduling Order through exclusion of evidence. *Geiserman*, 893 F.2d at 790 ("[A] trial court's decision to exclude evidence as a means of enforcing a pretrial order 'must not be disturbed' absent a clear abuse of discretion.") (quoting *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)). That discretion should be exercised here. The Court's Scheduling Order set a clear deadline for expert opinions and the proper scope of rebuttal reports. All parties agreed to both the deadlines and the scope of rebuttal reports before the Court's Order was entered. It is clear that Paragraphs 32–35 of Mr. Mallis' Rebuttal Report do not fall within the scope of rebuttal reports as outlined by the Federal Rules. And, Plaintiffs have shown no good cause for modifying the Court's Scheduling Order to allow a new affirmative opinion after the affirmative opinion deadline. Because Paragraphs 32–35 of Mr. Mallis' Rebuttal Report are not proper rebuttal, the Court should exclude them.

Dated: June 15, 2020

Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Timothy C. Shelby*
Joseph Y. Ahmad
Texas Bar No. 00941100
Southern District of Texas No. 11604
Timothy C. Shelby
Texas Bar No. 24037482
Southern District of Texas No. 39044
Sammy Ford IV
Texas Bar No. 24092531
Southern District of Texas No. 950682
Jason McManis
Texas Bar No. 24088032
Southern District of Texas No. 3138185
Jordan Warshauer
Texas Bar No. 24086613
Southern District of Texas No. 2994699
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101
Fax: (713) 655-0062
joeahmad@azalaw.com
tshelby@azalaw.com
sford@azalaw.com
jmcmanis@azalaw.com
jwarshauer@azalaw.com

**ATTORNEYS FOR DEFENDANTS OFS INTERNATIONAL, LLC, OILFIELD SERVICES AND TECHNOLOGIES, LLC, THREADING, AND PRECISION MANUFACTURING, LLC and FERMATA TECHNOLOGIES, LLC**

## CERTIFICATE OF SERVICE

I certify that on June 15, 2020, a true and correct copy of the above and foregoing has been served via CM/ECF on all counsel of record.

                                           */s/ Jason S. McManis*
                                           Jason S. McManis